UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW C. ROGERS, JR., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC SERVICES, INC., et al., <br><br> Defendants. | CASE NO. C18-1339-MJP <br><br> ORDER GRANTING MOTION FOR REMAND |

THIS MATTER comes before the Court on Plaintiff's Motion for Remand. (Dkt. No. 10.) Having reviewed the Motion, the Response (Dkt. No. 13), the Reply (Dkt. No. 14), and the related record, the Court GRANTS the Motion.

**Background**

Mr. Rogers commenced this action in King County Superior Court on August 3, 2018, alleging that his former employer Regional Disposal Company ("RDC")[1] and its individual

---

[1] In addition to RDC, the First Amended Complaint names Republic Services, Inc.; Rabanco, Ltd.; Rabanco Recycling, Inc.; and Allied Waste Services of North America, LLC. (Dkt. No. 1, Ex. 2 at ¶¶ 1.1-1.7.) Mr. Rogers apparently was employed by RDC only, and

employees Scott Bissel and Richard McClurg (collectively, "Defendants") discriminated against him on the basis of race and age. (See Dkt. No. 1, Ex. 2) ("FAC"). Mr. Rogers asserted claims for (1) discrimination, hostile work environment, and unlawful retaliation in violation of the Washington Law Against Discrimination, RCW 49.60 et seq. ("WLAD"); (2) negligent hiring and negligent supervision; (3) intentional interference with business expectancy; (4) violation of public policy; (5) outrage; (6) intentional infliction of emotional distress; and (7) breach of contract. (Id.)

These claims are based on the following assertions: Mr. Rogers, who is African American and was over forty at all relevant times, worked for RDC from 1988 until 2015, when he was terminated. (FAC at ¶ 3.2.) Throughout his employment, Mr. Rogers performed "at or above the standards required by his employer" and was able to "perform all essential job functions of his position." (Id. at ¶ 3.5.) However, he was targeted and treated differently from co-workers who were not African American and not over forty. (Id. at ¶ 3.6.) For example, Mr. Rogers alleges that Mr. Bissell and Mr. McClurg regularly engaged in aggressive conduct towards him, including shouting at him, demeaning him unreasonably criticizing him, and using racial slurs against him. (Id.) In addition, Mr. Rogers alleges that he was targeted for "unwarranted discipline." (Id.) Mr. Rogers alleges that, although he regularly complained about this treatment to his supervisors, they failed to investigate or take action regarding his complaints. (Id. at ¶ 3.7.)

The case was removed to federal court on September 10, 2018. (See Dkt. No. 1.) Defendants contend that jurisdiction lies with this Court because Mr. Rogers' claims involve

---

Defendants have asserted that the remaining corporate defendants are not properly named in this action. (See Dkt. No. 1 at 2.)

interpretation of the Collective Bargaining Agreement entered into between Rabanco Ltd. d/b/a Rabanco Recycling Co., RDC (Black River Transfer Station), and the International Union of Operating Engineers, Local 302, AFL-CIO (Dkt. No. 3, Ex. A) ("CBA"), and are therefore preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"). (Id. at 3.) The CBA contains the following relevant provisions:

> **ARTICLE 2 – COMPANY AUTHORITY**
>
> 2.1  The Employer retains all the customary, usual, inherent and exclusive rights, decision making, prerogatives, functions and authority connected with or in any way incident to its responsibility to manage the facility or any part of it, unless specifically and expressly limited by a term or provision in this Agreement.
>
> . . .
>
> 2.3  [T]he exlusive rights, functions and authority retained by the Employer shall include, but are not limited to the following:
>
> . . .
>
> I.  To establish, revise and implement standards of hiring, promotion, quantity of work, quality of work, and safety;
>
> L.  To determine reasonable work performance levels and standards of performance of all employees and of all job classifications and to determine whether any individual meets such levels and standards;
>
> M.  To evaluate, lay off, reprimand, discipline, suspend, demote or discharge an employee for just cause . . .
>
> **ARTICLE 4 – NON-DISCRIMINATION**
>
> 4.1  The Employer and the Union (including the employees covered by this Agreement) agree that there will be no discrimination against any Employee or job application in violation of any federal, state or municipal law or regulation.

**ARTICLE 6 – DISCIPLINE & DISCHARGE**

> 6.1 The Employer shall have the right to discipline Employees for just cause, up to an including discharge. Terminations may be challenged through the Grievance and Arbitration Procedures.

(Dkt. No. 13 at 4, 7-8; CBA at Arts. 2, 3, 6.)

Mr. Rogers contends that his claims are not preempted under Section 301 and moves for remand. (Dkt. No. 10.)

**Discussion**

**I. Legal Standard**

Removal of actions filed in state court based upon preemption is governed by 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal jurisdiction, and the "strong presumption" against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

Section 301 vests federal courts with jurisdiction to hear suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ." 29 U.S.C. § 185(a). Its preemptive force is "so powerful as to displace entirely any state cause of action for 'violation of contracts between an employer and a labor organization.'" Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23 (1983) (citation omitted). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [Section] 301 or other provisions of the federal labor law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). Instead, a claim must be "substantially dependent on analysis of a collective-bargaining agreement." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024,

1032 (9th Cir. 2016) (citations omitted). The mere need to "look to," "consider," "refer to," or "apply" the CBA will not result in preemption. <u>McCray v. Marriott Hotel Servs., Inc.</u>, 902 F.3d 1005, 1011 (9th Cir. 2018) (citations omitted).

## II. Breach of Contract Claim

Defendants contend that Mr. Rogers' breach of contract claim is necessarily preempted by Section 301, as the only contract between Mr. Rogers and any Defendant is the CBA. While Mr. Rogers states that he voluntarily dismissed his breach of contract claim on October 5, 2018 (Dkt. No. 9), a plaintiff may not voluntarily dismiss an action after the opposing party serves its answer. Fed. R. Civ. P. 41(a)(1). Defendants already had served their answers when the notice of dismissal was filed (Dkt. Nos. 6, 7), such that a signed stipulation was required. Fed. R. Civ. P. 41(a)(1)(A)(ii). However, Defendants have indicated that they "are not opposed to entering into a stipulation to dismiss this claim." (Dkt. No. 13 at 2.) The Court interprets Mr. Rogers' attempt to dismiss his breach of contract claim and Defendants' non-opposition as a stipulated request to dismiss the claim, which it hereby GRANTS and DISMISSES WITH PREJUDICE.

Having dismissed the breach of contract claim, the Court does not consider it as part of the preemption analysis.

## III. Negligent Hiring and Supervision Claim

Defendants contend that Mr. Rogers' negligent hiring and supervision claims are "inextricably intertwined" with provisions of the CBA, as determining whether RDC breached a duty with respect to its training or supervision of Mr. Bissell or Mr. McClurg will require the Court to interpret these provisions to determine (1) "whether the individual defendants had cause to discipline Plaintiff, and whether RDC followed the CBA in its provision of training and supervision of the individual defendants" and (2) "whether any 'term or provision' in the CBA

has limited RDC's right, or is otherwise relevant to any alleged duty of RDC, to train and supervise the individually named defendants." (Dkt. No. 13 at 9.)

As an initial matter, the Court points out that Mr. Rogers' negligent hiring and supervision claim is not based merely on the fact that Mr. Bissell and Mr. McClurg disciplined him. Mr. Rogers alleges that, in addition to "unreasonably criticizing [his] work and targeting [him] for unwarranted discipline," the individual defendants also "regularly engaged in aggressive conduct towards [him], including, but not limited to, shouting at [him], making racial slurs towards [him], [and] demeaning [him]." (FAC at ¶ 3.6.) Mr. Rogers alleges that Mr. Bissell and Mr. McClurg referred to him as a "n****r," "office b***h," "big black guy," and "lazy," and asked him "do you shine shoes?" (Id.)

With respect to Defendants' first contention, whether Mr. Bissell and Mr. McClurg had cause to discipline Mr. Rogers is irrelevant, as there can be no dispute that—notwithstanding any term in the CBA relating to discipline—they did not have cause to use racial slurs against him or to demean him.

With respect to their second contention, Defendants do not cite any term, phrase, or provision in the CBA which must be interpreted. Mere speculation that such a provision might exist will not defeat the motion for remand. See Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691-92 (9th Cir. 2001) (explaining that "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim," nor is the fact that a court must "look to" the CBA "merely to discern that none of its terms is reasonably in dispute") (citations omitted).

Therefore, the Court finds that Mr. Rogers' negligent hiring and supervision claims are not preempted.

**IV.    WLAD Claims**

Defendants similarly contend that analysis of Mr. Rogers' WLAD claims will require interpretation of the CBA. Article 2 of the CBA gives the employer the rights "[t]o establish, revise, and implement standards of . . . quality of work," "[t]o determine reasonable work performance levels and standards of performance of all employees and of all job classifications and to determine whether any individual meets such levels and standards," and "[t]o evaluate, lay off, reprimand, discipline, suspend, demote or discharge an employee for just cause." (CBA at Art. 2.3.) Defendants claim these provisions must be interpreted to determine whether Mr. Rogers was performing "satisfactory work" so as to state a prima facie case of race discrimination under the WLAD. (Dkt. No. 13 at 13-14.)

As an initial matter, the Court notes that Defendants misstate what is required to state a claim under the WLAD. To establish a prima facie case of employment discrimination, Mr. Rogers must show: (1) that he is a member of a protected class; (2) that he was qualified for his position and performing satisfactory work; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside his protected class received more favorable treatment. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (citation omitted); Davis v. West One Auto. Grp., 140 Wn. App. 449, 459 (2007). Alternatively, Mr. Rogers may provide evidence of "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." Hawn, 615 F.3d at 1156 (citations omitted). While Defendants focus on the "satisfactory performance" prong, they overlook the fact that evidence of "other circumstances" (i.e., the alleged repeated use of racial slurs by his superiors) may be sufficient.

1    In any event, the Court finds that Mr. Rogers' WLAD claims are not preempted under the
2    two-step analysis set forth in Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir.
3    2007): First, the claims "involve[] a right conferred upon an employee by virtue of state law, not
4    by a CBA." Id. (citing Lueck, 471 U.S. at 212). The right not to be discriminated against is
5    defined under state law and is not negotiable. See, e.g., Humble v. Boeing Co., 305 F.3d 1004,
6    1009-10 (9th Cir. 2002); Gillum v. Safeway Inc., Case No. C13-2047BJR, 2015 WL 1538453, at
7    *10 (W.D. Wash. Apr. 7, 2015); see also Jackson v. S. Cal. Gas Co., 881 F.2d 638, 644 (9th Cir.
8    1989). Second, the claims are neither "substantially dependent" on an analysis of the CBA,
9    Burnside, 491 F.3d at 1059, nor do they "necessarily require[] the court to interpret an existing
10   provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute."
11   Cramer, 255 F.3d at 693.
12        The CBA does not provide any criteria for determining whether an employee's
13   performance is satisfactory, and Defendants do not substantively explain how Article 2 relates to
14   resolution of Mr. Rogers' claims. See Miller v. A T & T Network Sys., 850 F.2d 543, 547 (9th
15   Cir. 1988) ("The mere fact that a CBA contains terms that could govern the same situations that
16   a state law governs does not necessarily mean that the state law requires interpretation of the
17   terms in the CBA."). Nor does the CBA set out any specific procedures relevant to the present
18   dispute. Article 7's grievance procedure is permissive, not mandatory, with respect to
19   terminations. (See CBA at Art. 6.1 ("Terminations *may* be challenged through the Grievance
20   and Arbitration Procedures.") (emphasis added).) And nothing in Article 7 or elsewhere in the
21   CBA makes the grievance procedure mandatory with respect to claims of discrimination. (Id. at
22   Art. 7.1 ("Grievances are defined as complaints or disputes *involving the interpretation of this*
23   *Agreement*.") (emphasis added).) In this regard, the cases cited by Defendants—Phelps v.
24

Multicare Health Sys., Case No. C15-5120RBL, 2017 WL 2876319 (W.D. Wash. July 6, 2017) and Andreasen v. Supervalu, Inc., Case No. C12-5914RBL, 2013 WL 2149714 (W.D. Wash. May 16, 2013)—are materially distinguishable. In Phelps, the CBA included detailed provisions that (1) prohibited discrimination "except where it constitutes a 'bona fide occupational qualification"; (2) implemented a mandatory grievance procedure; and (3) "define[d] the procedure and bases for [the employer] to take adverse employment actions," such that "the reasonableness of [the employer]'s actions—and thus the disability discrimination claim itself—turn[ed] on interpreting the CBA." 2017 WL 2876319, at *2. Likewise, in Andreasen, the CBA required that "all grievances as the result of 'any such investigation' . . . be settled in accordance with" a grievance process. 2013 WL 2149714, at *1. In contrast, here, there is no provision in the CBA limiting Defendants' obligations with respect to non-discrimination, nor requiring Mr. Rogers to comply with any specific grievance procedure.

Therefore, the Court finds that Mr. Rogers' WLAD claims are not preempted.

**V.     Remaining Claims**

Defendants contend that Mr. Rogers' remaining common law tort claims arise from his purportedly wrongful termination and require interpretation of the "just cause" and other disciplinary provisions of the CBA. As plead, however, the remaining claims arise not only from the wrongful termination, but also from Mr. Bissell and Mr. McClurg's alleged use of racial slurs and demeaning treatment. For the same reasons discussed above, the Court cannot discern any basis for finding that the remaining claims requre interpretation of the CBA.

Therefore, the Court finds that Mr. Rogers' common law tort claims are not preempted.

## VI. Attorneys' Fees

In his reply, Mr. Rogers requests attorneys' fees and costs incurred in responding to this motion. While Defendants failed to establish that remand was warranted, the Court does not find that their contentions regarding removal were so objectively unreasonable as to warrant fees under 28 U.S.C. § 1447(c). Nor does the Court find that Defendants sought to remove the case "for the purpose of prolonging litigation and imposing costs on the opposing party." <u>Martin v. Franklin Cap. Corp.</u>, 546 U.S. 132, 140 (2005).

Therefore, Mr. Rogers' request for fees and costs is DENIED.

## Conclusion

Having found that Mr. Rogers' claims are not preempted under Section 301, the Court GRANTS the Motion for Remand and REMANDS this case to King County Superior Court for all further proceedings. Each party shall bear its own fees and costs.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 19, 2018.

Marsha J. Pechman
United States District Judge